(No. 92643.—■)

*In re* B.L.S., a Minor (The People of the State of Illinois, Appellant, v. B.L.S., Appellee).

*Opinion filed December 5, 2002.*

James E. Ryan, Attorney General, of Springfield, and Terence M. Patton, State's Attorney, of Cambridge (Joel D. Bertocchi, Solicitor General, William L. Browers and Lionel W. Weaver, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, John X. Breslin and Rita Kennedy Mertel, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Robert J. Agostinelli, Deputy Defender, and Kerry J. Bryson, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE KILBRIDE delivered the opinion of the court:

B.L.S. was adjudicated an habitual juvenile offender and committed to the Department of Corrections, Juvenile Division, (DOC) until his twenty-first birthday, as mandated by section 5—815(f) of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/5—815(f) (West 2000)). The appellate court affirmed the adjudication and commitment, but held that B.L.S. was entitled to credit for time spent in custody before sentencing. 325 Ill. App. 3d 96, 100. This court allowed the State's petition for leave to appeal. 177 Ill. 2d R. 315.

The State asks this court to hold that B.L.S. is not entitled to receive predisposition credit against his commitment. B.L.S. seeks cross-relief, asking this court to hold that the appellate court erred in determining that a social investigation report was not required before committing him to the DOC. We affirm the appellate court and hold that: (1) an habitual juvenile offender is entitled to receive predisposition credit against a determinate

sentence; and (2) the trial court's failure to order a social investigation report before committing B.L.S. to the DOC was harmless error.

## I. BACKGROUND

B.L.S., a minor, pleaded guilty to an aggravated battery and was held in custody in a juvenile detention home before being adjudicated an habitual juvenile offender under section 5—815(f) of the Act (705 ILCS 405/5—815(f) (West 2000)). Pursuant to the requirements of section 5—815(f) of the Act, B.L.S. was committed to the DOC until his twenty-first birthday. The trial court did not award any predisposition credit, nor did the trial court order a social investigation report before committing B.L.S. to the DOC. The appellate court affirmed the adjudication and commitment, but held that B.L.S. was entitled to predisposition credit and remanded the cause for calculation of predisposition detention credit. 325 Ill. App. 3d 96. This court allowed the State's petition for leave to appeal. 177 Ill. 2d R. 315.

## II. ANALYSIS

At issue is whether habitual juvenile offenders are entitled to receive credit for predisposition custody. The relevant portion of the Act, section 5—815(f), provides as follows:

"If the court finds that the prerequisites established in subsection (a) of this Section have been proven, it shall adjudicate the minor an Habitual Juvenile Offender and commit him to the Department of Corrections, Juvenile Division, until his 21st birthday, without possibility of parole, furlough, or non-emergency authorized absence. However, the minor shall be entitled to earn one day of good conduct credit for each day served as reductions against the period of his confinement. Such good conduct credits shall be earned or revoked according to the procedures applicable to the allowance and revocation of good conduct credit for adult prisoners serving determinate sentences for felonies.

> For purposes of determining good conduct credit, commitment as an Habitual Juvenile Offender shall be considered a determinate commitment, and the difference between the date of the commitment and the minor's 21st birthday shall be considered the determinate period of his confinement." 705 ILCS 405/5—815(f) (West 2000).

The State contends that habitual juvenile offenders are not entitled to credit for predisposition confinement because the Act does not expressly provide for such credit. B.L.S. argues that an habitual juvenile offender is entitled to receive the same credit as an adult offender sentenced to a determinate sentence.

Also at issue is the social investigation report requirement of the Act. Section 5—705(1) of the Act provides, in relevant part:

> "At the sentencing hearing, the court shall determine whether it is in the best interests of the minor or the public that he or she be made a ward of the court, and, if he or she is to be made a ward of the court, the court shall determine the proper disposition best serving the interests of the minor and the public. *** No order of commitment to the Department of Corrections, Juvenile Division, shall be entered against a minor before a written report of social investigation, which has been completed within the previous 60 days, is presented to and considered by the court." 705 ILCS 405/5—705(1) (West 2000).

B.L.S. argues that the trial court erred in failing to order a social investigation report before committing him to the DOC. The State contends that a social investigation report is not required before sentencing an habitual juvenile offender to the DOC because the trial court has no sentencing discretion.

The parties raise issues of statutory construction. We review issues of statutory construction *de novo*. *In re D.D.*, 196 Ill. 2d 405, 418 (2001). The primary purpose of statutory construction is to determine and give effect to the legislature's intent, while presuming the legislature did not intend to create absurd, inconvenient, or unjust

results. *D.D.*, 196 Ill. 2d at 418-19. The best indication of legislative intent is the language of the statute. *In re D.L.*, 191 Ill. 2d 1, 9 (2000). If the language of the statute is clear and unambiguous, there is no need to resort to other aids of construction. *D.L.*, 191 Ill. 2d at 9. A statute is ambiguous if it is capable of more than one reasonable interpretation. *In re B.C.*, 176 Ill. 2d 536, 543 (1997). In ascertaining legislative intent, it is proper to compare statutes that concern the same subject matter and to consider statutes on related subjects. See *Anderson v. City of Park Ridge*, 396 Ill. 235, 244 (1947).

### A. Credit Against Commitment for Time Spent in Predisposition Detention

On the first issue, section 5—815(f) of the Act requires that an habitual juvenile offender be committed to the DOC until age 21. 705 ILCS 405/5—815(f) (West 2000). Commitment as an habitual juvenile offender is considered a determinate commitment and good-conduct credit for habitual juvenile offenders is determined according to the procedures applicable to adult prisoners. 705 ILCS 405/5—815(f) (West 2000). Section 5—8—7(b) of the Unified Code of Corrections (the Code) provides the rules for calculating the length of imprisonment for offenders and states that "[t]he offender shall be given credit on the determinate sentence *** for time spent in custody as a result of the offense for which the sentence was imposed." 730 ILCS 5/5—8—7(b) (West 2000). Whether an habitual juvenile offender is entitled to credit for predisposition detention is an issue of first impression.

Our appellate court districts are divided on the issue of whether a delinquent minor should receive sentence credit for time spent in predisposition detention. Compare *In re E.C.*, 297 Ill. App. 3d 177 (4th Dist. 1998), and *In re Jesus R.*, 326 Ill. App. 3d 1070 (4th Dist. 2002) (holding that juveniles sentenced to indeterminate terms are

entitled to predisposition credit), with *In re J.J.M.*, 299 Ill. App. 3d 327 (2d Dist. 1998), and *In re C.L.P.*, 332 Ill. App. 3d 640 (2d Dist. 2002) (holding that juveniles sentenced to indeterminate terms are not entitled to predisposition credit).

The appellate court in this case relied on *E.C.* to reach its conclusion that habitual juvenile offenders are entitled to predisposition credit. In his brief, B.L.S. relies on *E.C.* and *Jesus R.* to support his argument that there is no statutory support for denying predisposition credit. As the State correctly points out, *E.C.*, *Jesus R.*, *J.J.M.*, and *C.L.P.* are distinguishable because each of those cases involved an indeterminate commitment. We agree with the State that the issue of whether a juvenile sentenced to an indeterminate term is entitled to predisposition credit is not before this court.

The issue before this court is confined to whether an habitual juvenile offender sentenced to a determinate term is entitled to receive credit for predisposition detention. In other words, we must determine whether the rules for calculating the length of the term of imprisonment for offenders, provided in section 5—8—7 of the Code, are applicable to an habitual juvenile offender sentenced to a determinate term under section 5—815(f) of the Act. We need not decide whether a juvenile sentenced to an indeterminate term is entitled to predisposition credit.

The State argues that B.L.S. is not entitled to credit for his predisposition confinement. According to the State, the right to predisposition credit is statutory and no such right has been provided to habitual juvenile offenders by the Act. The State reasons that the legislature's failure to include such a provision demonstrates its intent to render the statutory right to predisposition detention credit inapplicable to habitual juvenile offenders. Conversely, B.L.S. argues that nothing in the Act

prohibits granting predisposition detention credit to an habitual juvenile offender.

The State's interpretation of the statute is reasonable. However, B.L.S.'s construction of the statute is just as reasonable. A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. *People v. Jameson*, 162 Ill. 2d 282, 288 (1994). Here, the statute is clearly subject to more than one reasonable interpretation and is thus ambiguous. See *B.C.*, 176 Ill. 2d at 543. Accordingly, we must employ aids of statutory construction to determine legislative intent, while avoiding absurd, inconvenient, or unjust results. See *D.D.*, 196 Ill. 2d at 419. Where the language of the statute is ambiguous, it is appropriate to examine the legislative history. *People v. Zaremba*, 158 Ill. 2d 36, 40 (1994). In this case, the intent of the legislature concerning predisposition credit was absent from the legislative history of the Act. Another source to ascertain legislative intent is the council commentary to the statute. *People v. Ross*, 168 Ill. 2d 347, 352 (1995). Although not binding upon this court, council commentary is persuasive authority. *Ross*, 168 Ill. 2d at 352.

The council commentary to section 5—8—7 of the Code states, in relevant part, "[t]his section *** gives full credit for time served in custody as a result of the offense for which the sentence was imposed. This would apply irrespective of where the offender was confined ***." 730 ILCS Ann. 5/5—8—7, Council Commentary, at 622 (Smith-Hurd 1997). The council commentary continues, explaining, "[g]enerally, Illinois has operated under a full crediting statute *** to give benefit to the offender for all time served in confinement both prior to and subsequent to actual imprisonment." 730 ILCS Ann. 5/5—8—7, Council Commentary, at 622 (Smith-Hurd 1997). Accordingly, the council commentary indicates the legislature's intent that offenders receive credit for all time spent in confinement.

Moreover, this court has stated that "[t]he credit requirement of section 5—8—7(b) is meant to account for all time served in confinement for a particular offense." *People v. Latona*, 184 Ill. 2d 260, 270 (1998). The purpose of the credit requirement of section 5—8—7(b) is to ensure that offenders do not ultimately remain incarcerated for periods in excess of their eventual sentences. *Latona*, 184 Ill. 2d at 270. "Through section 5—8—7(b) the legislature has explicitly required that offenders receive credit against their terms of imprisonment when they are 'in custody as a result of the offense for which the sentence was imposed.' " *People v. Robinson*, 172 Ill. 2d 452, 462 (1996).

Accordingly, the resolution of the issue before us is straightforward. The habitual juvenile offender provisions mandate a determinate sentence in the DOC. Section 5—8—7(b) of the Code requires full credit against determinate sentences for all time served in confinement. Thus, the legislature had no need to include any predisposition credit provision in the habitual juvenile offender statute.

Nothing in the Code restricts section 5—8—7(b) to adult offenders, and we can conceive of no rationale for denying a juvenile credit against a determinate sentence for time spent in predisposition custody. Consequently, we conclude the legislature intended that the rules for calculating the term of imprisonment for an offender sentenced to a determinate sentence are applicable to an habitual juvenile offender. Any other interpretation would lead to an absurd and unjust result. Moreover, the State has not presented any argument as to harm that would result from granting such predisposition credit.

Furthermore, our holding here is consistent with this court's recent ruling concerning the applicability of another rule in juvenile proceedings. See *In re A.G.*, 195 Ill. 2d 313 (2001). In *A.G.*, we considered whether

Supreme Court Rule 604(d), governing appeals from a judgment entered on a guilty plea, is applicable to juvenile proceedings. We recognized that recent amendments to the Act have resulted in juvenile proceedings that are similar to adult criminal proceedings. *A.G.*, 195 Ill. 2d at 317-19. We commented that amendments to the Act "represent[ ] a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and holding juvenile offenders accountable for violations of the law." *A.G.*, 195 Ill. 2d at 317. We further noted that "virtually all of the constitutional requirements of a criminal trial have been introduced into juvenile delinquency proceedings." *A.G.*, 195 Ill. 2d at 318. Accordingly, we held that compliance with Rule 604(d) is required in juvenile proceedings. *A.G.*, 195 Ill. 2d at 319.

A similar result is compelled by the circumstances in this case. Public safety and punishment are now the overriding concerns of the juvenile justice system. *A.G.*, 195 Ill. 2d at 317. The incarcerated juvenile's liberty is restrained just as effectively as that of an adult offender. See *In re Urbasek*, 38 Ill. 2d 535, 541 (1967). We therefore hold that an habitual juvenile offender is entitled to receive credit for time spent in custody prior to sentencing.

### B. Commitment Under Section 5—815(f) Without a Social Investigation Report

In his request for cross-relief, B.L.S. contends that the appellate court erred in holding that a social investigation report was not required prior to committing him to the DOC. Respondent bases his claim on the mandatory language of section 5—705(1) of the Act (705 ILCS 405/5—705(1) (West 2000)), requiring the trial court to consider a social investigation report before committing a minor to the DOC.

Section 5—705(1) of the Act specifies the circum-

stances to be considered in determining whether to make the minor a ward of the court. If the minor is made a ward of the court, then the trial court must determine the disposition best suited to the interests of the minor and the public. Section 5—705(1) further provides that the judge may rely on "[a]ll evidence helpful in determining these questions, including oral and written reports." 705 ILCS 405/5—705(1) (West 2000). A social investigation report includes information of the minor's physical and mental history and condition, family situation and background, economic status, education, occupation, personal habits, and history of delinquency or criminality. 705 ILCS 405/5—701 (West 2000). Thus, the social investigation report provides the trial court with information to assist in determining whether to make the minor a ward of the court and in determining an appropriate disposition for the minor.

Here, the language of the statute clearly and unambiguously states that "[n]o order of commitment to the Department of Corrections, Juvenile Division, shall be entered against a minor before a written report of social investigation *** is presented to and considered by the court." 705 ILCS 405/5—705(1) (West 2000). There are no exceptions made for those situations when the judge lacks sentencing discretion. Therefore, a social investigation report must be prepared before sentencing any minor to the DOC, and the trial court erred by sentencing B.L.S. without the benefit of the report.

In affirming the trial court, the appellate court erroneously held that a social investigation report was not required in this case. However, we may affirm the trial court's decision on any basis established by the record. *People v. Brownlee*, 186 Ill. 2d 501, 511 (1999). We are instructed by Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)) that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disre-

garded." Rule 615(a) is applicable in juvenile appeals. *In re W.C.*, 167 Ill. 2d 307, 322 (1995). Here, the trial court had no sentencing discretion because, once B.L.S. was adjudicated an habitual juvenile offender, section 5—815(f) of the Act mandated that the trial court commit him to the DOC until his twenty-first birthday. Thus, a social investigation report would have served no purpose in the decision to enter the sentencing order and remandment for resentencing is not necessary because B.L.S. was not prejudiced by the absence of the report.

We recognize that information provided in a social investigation report may be useful to the DOC and others involved in the ward's care, treatment, and rehabilitation. However, B.L.S. has not raised such an argument, and we have been provided with no information that the DOC requires such a report. Accordingly, we hold that the trial court's error in failing to order a social investigation report was harmless.

## III. CONCLUSION

We hold that an habitual juvenile offender is entitled to receive credit against a determinate sentence for time spent in predisposition detention. We also hold that the trial court's failure to order a social investigation report prior to committing B.L.S. to the DOC was harmless error.

For the foregoing reasons, we affirm the judgment of the appellate court.

*Affirmed.*